JUDITH P. THOMAS, Respondent-Appellee, *v.* PAYNE E. L. THOMAS, Petitioner-Appellant.

Fourth District   No. 4—82—0279

Opinion filed January 11, 1983.

John L. Swartz, of Giffin, Winning, Lindner, Newkirk, Cohen & Bodewes, P.C., of Springfield, for appellant.

Alexandra deSaint Phalle, of Londrigan & Potter, P.C., and John P. Lynaugh, both of Springfield, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

Petitioner Payne Thomas filed a petition for relief from a decree of divorce requesting a declaration that his obligation for the continued payment of alimony to respondent Judith Thomas had terminated. Respondent filed a counterpetition to compel the resumption of alimony payments. After a hearing in the circuit court of Sangamon County, the petition was denied and the counterpetition was granted.

The facts are uncontroverted. The Thomas' were divorced on May 10, 1973, and petitioner was ordered to pay alimony of $3,150 per month for 10 years and $3,000 per month thereafter until respondent's "death or remarriage." On July 20, 1978, respondent married Donald L. Laisure, Sr. Within a month, she filed a petition for declaration of invalidity of marriage, alleging incapacity to consent. At the hearing on the petition, respondent testified that she had been under the influence of intoxicating beverages combined with stupefying drugs administered by Laisure under the guise of vitamins. She further indicated that Laisure had threatened her life and those of her

parents if she would not have participated in the marriage ceremony. A default judgment was entered on November 14, 1978.

The sole issue germane to our decision is whether the term "remarriage" refers to a ceremony of marriage or a status of marriage. Two decisions of this State guide our determinations: *Lehmann v. Lehmann* (1922), 225 Ill. App. 513, and *In re Marriage of Kolb* (1981), 99 Ill. App. 3d 895, 425 N.E.2d 1301, *appeal denied* (1982), 88 Ill. 2d 551.

*Lehmann* involved a remarriage of a woman within one year of her divorce, at that time a prohibited practice in Illinois. The remarriage, however, did not take place in this State but in New Jersey. After living with her second husband in New York and Maine for 15 months, she obtained a default annulment on the ground that her second marriage was in violation of the Illinois statute. When she brought the appealed contempt action to compel alimony payments from her first husband, the court found the second marriage valid as so being where contracted and in her previous domiciles. As to the meaning of remarry and remarriage, the court was clear: "We think that said words as so used were intended by the parties to refer to the ceremony or act of marriage as distinguished from the status or relation thereafter." (*Lehmann v. Lehmann* (1922), 225 Ill. App. 513, 522.) The court later explained:

> "[I]t appears that after the Quintard marriage and during the entire period of the cohabitation of the parties thereto, respondent did not pay, and petitioner did not demand, any alimony for petitioner's own support as provided in the divorce decree and the written agreements. Both petitioner and respondent seemingly believed that the former had lost her right to receive such alimony from the latter and they acted accordingly, and thereby themselves practically construed their own agreements as to alimony. Such construction is entitled to great if not controlling weight and should, we think, be followed. [Citations.]" *Lehmann v. Lehmann* (1922), 225 Ill. App. 513, 526-27.

*Kolb* involved a remarriage of a woman in Las Vegas. At a reception immediately following the remarriage, the second husband became involved in a heated argument. As a consequence, the marriage was never consummated and was annulled in Nevada. The woman did not tell her first husband, who continued to pay monthly installments on an alimony in gross award. When he later petitioned for a declaration that his responsibility to pay alimony had earlier terminated, the court looked to *Lehmann's* clear statement regarding intent.

"The court stressed that the parties themselves had practically revealed their intent as to the meaning of the term 'remarriage' in the divorce decree and other agreements where the husband automatically terminated his alimony payments upon the wife's remarriage and she made no demands upon him for such payments until after her annulment. \*\*\*

We note that the approach followed by the court in *Lehmann* in explaining and ascertaining the intent of the parties in using this term was consistent with more recent decisions of this court." *In re Marriage of Kolb* (1981), 99 Ill. App. 3d 895, 899, 425 N.E.2d 1301, 1305.

The respondent in *Kolb* contended that she and her first husband intended the alimony payments to terminate upon her entering into a marriage from which she would be supported, based on the further intent that she should not receive simultaneous support from both men. The court rejected this contention and found, as did the *Lehmann* court, that the parties intended remarriage to refer to a ceremony of marriage.

In the case at bar, it appears that petitioner ceased his payment of alimony upon learning of respondent's second marriage. Under the rationale of *Lehmann* and *Kolb*, this would appear consistent with the intent that remarriage refer to a ceremony of marriage; however, additional facts must be considered.

Prior to the filing of the petition for declaration of invalidity of marriage, John Lynaugh, one of respondent's attorneys, gave notice of intent to file the petition to Bernard Segatto, then petitioner's attorney. Segatto advised Lynaugh that his client would not contest the hearing, but that the decree must be properly drawn so that petitioner could resume alimony payments. Approximately two months later, Segatto asked Lynaugh to expedite the hearing, so that it would be concluded, for tax reasons, before the end of the year. After securing a hearing date, Lynaugh notified Segatto. After the hearing, Segatto was given a copy of the judgment, and shortly thereafter petitioner resumed alimony payments as per the 1973 decree of divorce. Petitioner then continued to make the alimony payments for three years.

Unlike the parties in *Lehmann* and *Kolb*, the actions of the parties herein evidenced an intent that the term "remarriage" refer to a status, rather than a ceremony, of marriage. If this were not the case, petitioner would not have voluntarily resumed his alimony payments upon the judicial declaration of invalidity, for such a declaration would be immaterial. Under these specific circumstances, we find the term

remarriage, as used in the parties' decree of divorce, refers to a status of marriage.

The Thomas' have raised several other issues concerning respondent's lack of consent (see *In re Marriage of Kolb* (1981), 99 Ill. App. 3d 895, 900, 425 N.E.2d 1301, 1306) and whether the second marriage was void *ab initio* or voidable (see *In re Marriage of Kolb* (1981), 99 Ill. App. 3d 895, 897, 425 N.E.2d 1301, 1303). While it is unnecessary for us to reach these questions, we note that the courts are by no means agreed on their answers (see Annot., 45 A.L.R.3d 1033 (1972)). Petitioner has also contended that the declaration of invalidity is not binding on him as he had no standing to participate or intervene in that action. As petitioner made no attempt to participate or intervene, we decline to offer an advisory opinion on the question, and leave its resolution to an appropriate factual setting or the legislature (see Annot., 45 A.L.R.3d 1033 (1972)).

Accordingly, the judgments of the circuit court of Sangamon County are affirmed.

Affirmed.

BARRY, P.J., and SCOTT, J., concur.